## CHARLESTON.

STATE *v.* LOWRY.

(BRANNON, JUDGE, absent.)

Submitted January 31, 1896—Decided April 11, 1896.

1. CRIMINAL LAW—EVIDENCE—FORGERY.
   On the trial of a person accused of forgery the alleged forged paper must be produced, or its nonproduction satisfactorily ac- counted for, by showing it to be lost, destroyed, or in the hands of the accused or his friends; and, in the latter case, notice to pro- duce it must be given to the accused or his counsel before evidence of its existence, character, and contents is admissible.

2. CRIMINAL LAW—EVIDENCE—PROSECUTING ATTORNEY'S STATE- MENTS.
   The statements of the prosecuting attorney are not evidence against the accused, unless he is sworn, examined, and submits himself to cross-examination as any other witness.

3. CRIMINAL LAW—BURDEN OF PROOF—ALIBI.
   In criminal prosecutions, while the burden of proving an alibi is on the accused, on account of its affirmative nature, yet this does not dispense with the necessity of the state's proving the actual presence of the accused at the place where, at the time when, the crime was committed, when personal presence is essential to the commission of the crime; and if, from the evidence, the jury have a reasonable doubt of the presence of the accused at the place where, at the time when, the offence was committed, they should acquit him.

4. CRIMINAL LAW—EVIDENCE—DEPOSITIONS.

In criminal cases it is improper to permit the jury to take depositions in behalf of the accused to its room, on retiring; but the court should, on its request, have any portion of such depositions re-read to it.

5. CRIMINAL LAW—EVIDENCE—FORGERY.

It is error to allow one accused of forgery, on trial therefor, to be interrogated as to other similar papers, unless it is first shown that such papers were forged, and the accused had culpable connection therewith.

M. F. DRYDEN for plaintiff in error, cited Lackett, Insts. 499, 500; 2 Thomp. Trials & Juries, 1789, 1795, 1796; 40 W. Va. 718; 20 W. Va. 679, 681; Code, c. 131, s. 12; 4 W. Va. 610; 76 Pa. St. 353, 354; 21 W. Va. 741; 11 W. Va. 76; 33 Gratt. 834; 8 Leigh, 726; 6 Gratt. 723; 3 Greenl. Ev. 114, 115, 118, 119, 120; 8 Am. & Eng. Enc. Law, 503, 505; 59 Ind. 70; 23 Tex. App. 401; 64 Ind. 443; 66 Ill. 344; 33 W. Va. 140; 40 W. Va. 726; 40 N. E. Rep. 1089; 122 Ill. 79; 18 Neb. 159; 67 Iowa, 274.

ATTORNEY-GENERAL, T. S. RILEY, for the State, cited 41 W. Va. 407; 156 U. S. 432; 18 Neb. 159; 109 Ill. 65; 109 Mo. 189-195; 88 Va. 47; 16 S. E. Rep. 100; 62 Iowa, 405, 414; 95 Pa. St. 422; 74 Pa. St. 469; 81 Mo. 190; 16 Vt. 192; 70 Iowa, 268; 20 S. E. Rep. 251, 993; Code c. 131, s. 12; Code c. 159, s. 1; 23 W. Va. 309; 20 W. Va. 679; Thomp. Jury Trials, § 2578; 4 Leigh, 478.

DENT, JUDGE:

R. L. Lowry was on the 30th day of March, 1895, in the Criminal Court of Ohio county, convicted of forgery, and sentenced to the penitentiary for five years. The circuit court of said county having refused him any relief, he applied for and obtained a writ of error to this Court.

Numerous errors are assigned, but they are too cumbersome to be given at length. The first five assignments relate to the refusal of the court to give five several instructions. The sixth is to the arbitrary closing of the case by the court before the prisoner had concluded his evidence. The seventh is to the refusal of the court to allow certain depositions to be taken to the jury room by the jury. The ninth is to the refusal of the court to set aside the verdict and

grant a new trial. The tenth is to the failure of the prosecution to produce the alleged forged instrument, and to the proving the contents thereof without laying the proper foundation for the admission of such proof. The eleventh is to the variance between the instrument as proved and as alleged in the indictment. The twelfth is to the introduction of improper testimony highly prejudicial to the prisoner. Without considering these various errors in rotation, it is sufficient that several of them are well founded, and none of them but what are calculated to raise a question of doubt as to whether the prisoner has had that fair and impartial trial that the law accords to every one accused of a heinous crime.

The prisoner was indicted for forging, and uttering, knowing the same to be forged, the following paper, to wit: "No. 67. Wheeling, W. Va., July 12, 1893. The National Bank of West Virginia, at Wheeling, pay to the order of R. L. Lowry & Bro. forty two 65-100 dollars ($42 65-100). Goodhue & Thomas." And indorsed on the back thereof: "R. L. Lowry Bro., for R. L. Lowry. Received on same six dollars." The state proceeded to prove the contents of this paper without producing it or accounting for its nonproduction. To this the prisoner objected. The state then introduced one M. D. Post, whose testimony is as follows, to wit: "Question. Mr. Post, what is that you have in your hand? Answer. This is an indictment. Question. Well; an indictment in this case? Answer. Yes, sir; against R. L. Lowry. Question. You see in the first count, and, as well, in the second, the description of the paper alleged to have been forged? Answer. Yes, sir. Question. Have you seen the paper that is described there? Answer. I have. Question. Have you compared it carefully with the description in the indictments—as to face as well as to indorsements? Answer. Yes, sir. Question. Say whether or not both is a true and accurate description. Answer. They are both accurate descriptions, and I compared them myself carefully at the time this indictment was made. I wrote the indictment myself, and compared the original paper with the description set up in this indictment in the first count and in the second count, and they are both ac-

curate descriptions. Question. Can you say where the paper is now? Answer. No, sir." It does not appear who the witness is; in what capacity he acted in preparing the indictment; how he came to have the paper in his possession; what he did with it; whether he was the legal custodian of it, and, if so, whether he made diligent search for it where it should have been found; and that it was lost and could not be produced. For, if it could be produced, it must be, as it is the very gist of the prosecution, and it was improper to give evidence of its contents until its absence was satisfactorily accounted for, as the text writers declare. "The forged instrument must be produced, or its non-production justified from necessity, as by showing that it is lost or destroyed." 2 Bish. Cr. Proc. § 433. This witness simply testifies that he can not say where the paper now is, although he had it on one occasion. Several. other witnesses might have testified the same thing, yet such testimony is not sufficient to show that it was lost or destroyed, or might not be suppressed by some one connected with the prosecution, or that the failure to produce it was not the fault of the prosecutor. The instrument itself is the best evidence of itself and its contents, and therefore its production can never be dispensed with, unless unavoidable. *Pendleton* v. *Com.*, 4 Leigh, 694; *Manaway* v. *State*, 44 Ala. 375; *Com.* v. *Snell*, 3 Mass. 82; 8 Am. & Eng. Enc. Law, 534, 535, note.

It is true, after the state had introduced all its evidence touching the character, contents, and purport of the paper in question, the witness Post is recalled, and testifies that he received the check from Squire Gillespy, drew the indictment from the warrant and check, and then either put the check in the indictment and filed them away, or gave it to the prosecuting attorney. The prosecuting attorney then makes the following statement, which appears to have been addressed to the court, and is copied into the record: "By Mr. Howard: I want to testify: That the check of which Mr. Post has spoken in his testimony I received with the indictment, and exhibited both to the grand jury, in the grand jury room, on the day they met, and took the check from the grand jury room to put in a pigeon hole in

which papers of that kind are kept. That it remained there until some few days afterwards, when Mr. Caldwell came into court and said, 'If your honor please, we crave oyer of this paper in this case.' I immediately sent and got the paper, and just handed it to either Mr. Dryden or Mr. Caldwell, and since that time I have not seen the check. That I have carefully, thoroughly, and exhaustively examined every place in my office that is the least bit probable it could be. I have gone to the extent of going through receipt files and letter files, and every place, without reference to places in which it is usually kept; have opened envelopes of other cases, Mr. Handlan and I searching together, and devoted at least three hours to careful and systematic search for it. And I can say, after a thorough search, that it is not there, and that I have not seen it since." It is not shown that he was sworn, or that he was introduced as a witness, or that the prisoner admitted such statement to be used as evidence against him without cross-examination, or that he was cross-examined. The unsworn statements of the prosecuting attorney are not evidence against a prisoner. It is true, he says. "I want to testify." It does not appear that he did so, but that he merely made a statement of what he was willing to do, if required. He should have been sworn, as any other witness, and subjected himself to cross-examination, unless the prisoner waived the right to do so. The preliminary evidence as to the loss of a paper, before proving its contents, is addressed to the court, and not to the jury, and yet it is proper evidence for the consideration of the latter when the question is as to whether such a paper as that described was ever in existence. If it is not produced, and it is not shown to have been destroyed or lost, and thus rendered incapable of production, then the just inference is that such paper never had an existence. So that the evidence of the existence and loss is proper for the consideration of the jury. The clerk of the court, and not the prosecuting attorney, is the custodian of indictments; and, if the check was placed in the indictment, it would have been returned therewith to the clerk's office. So that, even admitting the statement of Mr. Howard to be evidence before the court and jury, there

is no evidence to show that such check is not in the custody of the clerk of the court, or in the clerk's office, or that any search therefor had been made in such office. The witnesses for the state purge themselves of the possession of the check, but that does not substantiate its loss, unless diligent search has been made for it where it might be legally deposited, or unless it is traced to the possession of the prisoner or his counsel, as Mr. Howard intimates in his statement; and then notice to produce it should be given, before attempting to prove its contents. *Foulkes* v. *Com.,* 2 Rob. (Va.) 836; 2 Bish. Cr. Proc. § 433, citing *State* v. *Cole,* 19 Wis. 142.

The following instructions asked by the prisoner were refused by the court: "Instruction No. 2. The jury are instructed further that the presumption of innocence is not a mere form, to be disregarded by the jury at pleasure, but it is an essential and substantial part of the law of the land, and binding on the jury in this case; and it is the duty of the jury to give the defendant in this case the full benefit of the presumption, and to acquit the defendant unless they feel compelled to find him guilty, as charged, by the law of the land and the evidence in this case, convincing them of his guilt, as charged, beyond all reasonable doubt." "Instructions No. 16. The court further instructs the jury that if they believe from the evidence that at the time the paper writing mentioned in the indictment was forged or uttered, or attempted to be employed as true, with the knowledge that said paper writing was false and forged, if at that time the defendant, R. L. Lowry, was in Catlettsburg, Ky., as shown by witnesses for the defendant, and was not present in Wheeling, Ohio county, W. Va., at the time the alleged offense was committed, then the jury are instructed that they must acquit the defendant, unless it has been proved to the satisfaction of the jury, and beyond all reasonable doubt, that he in some manner aided, assisted, advised, or encouraged the commission of the said offense before it was committed. Instruction No. 17. The court further instructs the jury that if they entertain any reasonable doubt as to whether or not the defendant was in Catlettsburg, Ky., or Wheeling, in Ohio county, W. Va.,

at the time the offense charged was committed, then, it is
a rule of law inflexible in its operation, and the sworn
duty of the jury, to give the benefit of such doubt to the
defendant and to acquit him, unless they are constrained
by the evidence to believe, beyond all reasonable doubt,
that in some manner the defendant aided, abetted, or en-
couraged the commission of the offense charged in the in-
dictment. Instruction No. 18. The court instructs the
jury that if, after considering all the evidence introduced
by the prosecution, and all the evidence introduced by the
defense, they entertain any reasonable doubt as to whether
the defendant has been identified as the person who com-
mitted the offense charged in the indictment, then the
jury are instructed that they should find the defendant not
guilty. Instruction No. 19. The jury are further in-
structed that, if they should entertain a reasonable doubt
as to the defendant's guilt, they should find him not guilty,
although the jury might not be able to find that the alibi
was fully proved."

There appears to be no good reason why these instructions
were not given to the jury. It is said that instructions to
the same import had already been given; yet, while this
is true, these are worded in a different manner from those
given, with the evident intention of bringing to the atten-
tion of the jury different phases of the defense, and, while
they might have been the same in effect, yet in cases of
doubt the prisoner is entitled to the benefit of it. It is not
the disposition of this Court to encourage counsel in an un-
due repetition of the same questions of law, in repeated
instructions, especially in civil cases; yet, where the evident
purpose is to protect the liberty or life of a prisoner, the
court should be careful not to deprive him of his legal
rights by a too strict construction of rules of practice.
The defense of the prisoner was not guilty, which he at-
tempted to substantiate by proving an alibi. These in-
structions principally related to such alibi—especially the
sixteenth and seventeenth. The burden of proving such
alibi is upon the prisoner, but if the evidence tends to
prove the same, and to show that he could not have been
guilty of the offense charged, because he was absent from

the place where, at the time when, it was committed, then it would be proper for the court to instruct the jury that if there was a reasonable doubt whether the prisoner was at the place where, at the time when, the offense was committed, they should acquit him. For, if they have a reasonable doubt as to his being present at the place when the offense was committed, then they must have the same doubt as to his committing the offense, as he could not commit it without being present. Alibi, being strictly a defense must be proven by the defendant. But, the presence of the accused being necessary to the commission of the offense, the burden of proving presence is first upon the state; and if the state fail to prove his presence, or the evidence, as a whole, still leaves the question of his presence a condition of reasonable doubt in the minds of the jury, it must acquit him, for the reason that he is not shown to be guilty, beyond all reasonable doubt. The defense of alibi is always set up in opposition to the affirmative proof of his presence, and saying that the burden is on the prisoner to establish such alibi is only to assert that he must produce sufficient proof to overcome the evidence of his presence already in, and thus raise a reasonable doubt in the minds of the jury as to the commission of the offense by him. This is in accord with the case of *State* v. *Ward*, 61 Vt. 192 (17 Atl. 483). It is not necessary to use the word "evidence" in every instruction, nor, in connection therewith, to use the word "whole," or the words "in the case"; for unless the contrary appears, every instruction will be persumed to be given "in view of the whole evidence in the case." For instance, take instruction No. 17, in these words: "The court further instructs the jury that if they entertain any reasonable doubt as to whether or not the defendant was in Catlettsburg, Ky., or Wheeling, W. Va., at the time the offense charged was committed." Here, undoubtedly, it must be presumed that the jury should consider the whole evidence in the case. So that this instruction is equivalent, in effect, to saying, "If the jury have any reasonable doubt as to the guilt of the prisoner, they must acquit him," which is the one universal golden rule and standard for the comparison and measurement of all instructions; and when any

instruction, it matters not what its verbiage, can be shown to be the equivalent of this standard, such instruction is proper and right, and should be given. In the light of the evidence in this case, the following clauses could be omitted from instructions No. 16 and No. 17 without vitiating them, to wit: "Unless it can be proved to the satisfaction of the jury, and beyond all reasonable doubt, that he in some manner aided, assisted, advised, or encouraged the commision of the said offense before it was committed," and "unless they are constrained by the evidence to believe, beyond all reasonable doubt, that in some manner the defendant aided, abetted, or encouraged the commision of the offense charged in the indictment." These reservations are in favor of the state, and there is no evidence tending to prove them; and while they are not improper, included in instructions for the prisoner, yet they are unnecessary, and would be improper, under the evidence, if given for the state. Technicalities should never be resorted to by the state to sustain prosecutions against citizens, or a stranger within its gates; but its delight should be to afford the highest and lowest, friend or foe, unfortunate enough to be charged with crime, a fair and impartial trial. Mr. Blackstone says it is better for ten guilty to escape than for one innocent man to suffer punishment wrongfully. The innocent never should be convicted. There is no excuse for it, except prejudice, partiality, undue influence, or bias; for if the golden rule above referred to—to wit, to convict no one charged with crime, unless his guilt is established beyond all reasonable doubt—is strictly observed, the conviction of the innocent is rendered impossible. This rule is not for the purpose of allowing the guilty to escape, but it is for the protection of innocency from unmerited condemnation through the imperfection of human justice. And it is nothing more than saying, where great wrong may be the result of mistaken choice, in case of doubt always take the side of safety. As life, liberty, and reputation are more valuable than property, the rules of evidence should be more carefully observed in criminal than in civil cases. Hence in the former the evidence of guilt must be conclusive, while in the latter mere preponderance must prevail.

The prosecution in this case seems to have been permitted by the court to use rather questionable means to secure the conviction of the prisoner. Counsel argue that this should be overlooked, as the prisoner would have been convicted in any event. If so, why did the prosecutor resort to such means? The introduction of another check, not shown to be forged, and with which the prisoner is not shown to have any connection whatever, and intimating that he forged and uttered the same, by asking him questions with that end in view, and the allowing such matter to remain before the jury, was plainly erroneous, and tended to prejudice the jury against the prisoner. Such evidence should not have been admitted, and, being admitted, should have been excluded. In the case of *State* v. *Saunders*, 68 Iowa, 370 (27 N. W. 455) the court holds, "In a proceeding for uttering forged notes, evidence tending to show that defendant had a questionable connection with another note was improperly admitted, when there was no evidence that such other note was forged." But not only must it be shown to have been forged, but the prisoner must be shown to have had questionable connection with it. It is true, the prisoner denied all connection with such check. So he denied all connection with the check on which the indictment was founded, and yet the jury found against him; and the mere intimation that he had forged other checks, even in presence of his denial, may have prejudiced him with the jury, coupled as it is with the fact that the court refused to reject such improper testimony.

Code, c. 131, s. 12, has no application to depositions taken in criminal cases, but they are governed by chapter 159, s. 1; and therefore the court committed no error in not allowing the jury to take the depositions to the jury room, but the court should have seen that the jury were fully informed as to their contents, so as to enable them to arrive at a just conclusion.

Before closing a case, the court should afford the prisoner a fair opportunity to introduce all his testimony. It is true, this trial appears to have been long drawn out, but the fault appears to be more with the prosecution than with the defense, owing to the haphazard way adopted in the introduc-

tion of testimony. The order of the testimony is usually immaterial, and yet some approach to order should be observed, so as to be consistent with and effect the ends of justice.

The judgment in this case is reversed, the verdict of the jury set aside, and a new trial awarded the prisoner, and the case is remanded to the criminal court of Ohio county, to be further proceeded in, in accordance with this opinion and the law in such cases made and provided.