311 S.E.2d 412

STATE of West Virginia

v.

Robert KOPA.

No. 15708.

Supreme Court of Appeals of West Virginia.

Dec. 15, 1983.

Silas B. Taylor, Asst. Atty. Gen., Charleston, for appellee.

William E. Galloway, Weirton, for appellant.

McHUGH, Justice.

This action is before this Court upon the appeal of Robert Kopa, appellant and defendant below, from his conviction in the Circuit Court of Hancock County for first degree murder. The appellant was convicted of committing such murder while in the commission of a burglary upon the home of the victim, Edna Virginia Karver, and was sentenced to life imprisonment with mercy. This Court has before it the petition for appeal, all matters of record and the briefs and oral argument of counsel.

The record indicates that in the early morning hours of September 15, 1981, at approximately 4:30 a.m., Edna Virginia Karver was found slain in her home in Weirton, Hancock County, West Virginia. The victim was found by members of the local rescue squad and Weirton police while lying face down in her bed with her hands tied behind her back and a gag in her mouth. An autopsy of the victim revealed that she had died from a series of six stab wounds in her back which had punctured her lungs and liver. The victim had also been severely beaten about the head and face. The time of death was placed anywhere from midnight to 4 a.m. on September 15, 1981. The victim was last seen alive at approximately 11:35 p.m. by a boarder of the victim as he was leaving for work.

The home in which the victim lived was found in a condition of disarray. Entry onto the premises was discovered to have come from a window that had been removed from the garage of the victim. Outside the window, footprints were discovered that allegedly belonged to one of the perpetrators and a footprint was also found in the blood lying next to the victim's bed. Photographs were taken of the footprints and later submitted for comparison with the tennis shoes of the appellant. Other pieces of physical evidence such as hair were collected at the scene and subjected to scientific analysis.

During the trial of the appellant, neighbors of the victim testified that they had seen a black and gold four-wheel-drive Plymouth Trailduster around the rear of the Karver residence at approximately 11:30 p.m. on the evening of September 14, 1981. One such neighbor, Michael Harris, was returning home at the time and testified that he noticed two people in the front seat of the Trailduster as it was leaving the alley which was located behind the victim's house and what he thought was movement in the back seat. At a later time, Harris identified the Trailduster that the appellant had borrowed from a friend earlier in the day as the one he saw that evening near the Karver residence.

On October 4, 1981, a man that lived across the street from the victim, William "Buddy" White, was arrested by the Weirton police for possession of a controlled substance. During his subsequent interrogation, White offered information on the murder of Mrs. Karver in exchange for immunity from prosecutions on the drug charge and the murder of the victim. Based upon the information supplied by White, the Weirton Police Department eventually arrested the appellant and two companions, William Joseph Gallo and Franklin V. Tesack, and charged them with the slaying of Edna Karver. A Hancock County Grand Jury indicted the appellant, along with Gallo and Tesack, for first degree murder and felony murder. The trials

of the three co-indictees were severed and the appellant was tried and convicted for felony murder.

White was granted immunity from prosecution and became the prosecution's chief witness. At trial, he testified that it was common knowledge in the neighborhood that Mrs. Karver kept $30,000 to $40,000 cash in her home and stored it in various appliances such as televisions, toasters and radios. White stated that he had told this to other persons who, in turn, informed the appellant, Gallo and Tesack. Arrangements were made with White to inspect the house of the victim for the possible commission of a burglary. In the early evening of September 14, 1981, the neighbor took the appellant, Gallo and Tesack to the Karver residence, at which time the three men extensively questioned White about Mrs. Karver's habits and those of her other neighbors. The inspection of the victim's house took place from a black and gold four-wheel-drive Plymouth Trailduster that the appellant and Gallo had borrowed from a friend earlier in the evening. Upon returning to the bar where they had met, White left the three men only to meet them again later in the evening. At this time, Gallo indicated to White the burglary would take place that evening.

The State offered additional evidence of a footprint found outside the point of entry of the victim's house that an expert testified could have been made by the right tennis shoe of the appellant, however, he could not do so conclusively. In addition, a speck of blood was found on the right tennis shoe of the appellant as well as on the cuff of a glove found in the Trailduster. Through scientific analysis, the blood found on these items was determined to be human but the amount was insufficient to define its type. A small knife was also found in the vehicle which experts could not rule out as the murder weapon, however, the knife was not admitted into evidence.

The appellant asserted the defense of alibi with various witnesses who testified that he and his co-indictees were in a local bar for most of the evening of September 14, 1981, and until 3:30 a.m. on September 15, 1981. The appellant and his alibi witnesses testified that at approximately 7:30 p.m. on September 14, the appellant and Gallo picked up Tesack in the Trailduster and then proceeded to a local bar. The appellant remained outside the bar and slept in the back of the vehicle. The appellant testified that he was awakened only when Gallo drove the vehicle to take a friend home. Upon their return to the bar at midnight, after only a 20 minute absence, the appellant and Gallo stayed at the tavern until their departure at 3:30 a.m. At this time the appellant and Gallo drove to the trailer of Pam Glasure, the appellant's girlfriend, and then went to sleep.

Testimony indicates that at approximately 4:00 a.m. on September 15, 1981, a local rescue squad received an anonymous telephone call instructing them to send an ambulance to the residence of the victim. The rescue squad member who received the call testified that the caller was female and the conversation consisted of the words: "Send an ambulance to 136 Pine Street and hurry." In an original statement given to police by Pam Glasure, the appellant's girlfriend, Glasure claimed responsibility for making the telephone call at the direction of the appellant. However, Glasure, during the appellant's preliminary hearing and before the Hancock County Grand Jury, denied ever making the anonymous telephone call. In any event, the prosecution called Glasure as one of its witnesses and upon her denial of the truth of the original statement, the prosecution impeached her with the prior inconsistent statement.

The appellant was convicted by a jury of first degree murder with a recommendation of mercy and was sentenced to life imprisonment with mercy. In subsequent trials, William Joseph Gallo and Franklin V. Tesack were acquitted of the murder of Edna Karver.

The principal assignments of error are as follows: (1) the trial court erred when it instructed the jury that the appellant had the burden of proving his alibi defense to the extent that it created a reasonable doubt in the mind of the jury as to his

guilt; (2) the trial court erred when it instructed the jury that it could return a verdict of first degree murder with a recommendation of mercy; (3) the trial court erred when it allowed the prosecution to impeach its own witness with a prior inconsistent statement that was unsworn and which the prosecution knew would be refuted at trial; (4) the trial court erred when it refused to admit into evidence the taped results of an out-of-court voice experiment conducted by defense counsel; (5) the trial court erred when it allowed a knife to be displayed in the courtroom upon the assurance of the prosecution that it would be connected to the crime, only to have it later excluded from evidence; and (6) the trial court erred when it denied the appellant's pre-trial motion to exclude from evidence certain items, some of which were bloods-

tained, and testimony surrounding the identification of that blood.[1]

I

## A. THE *ALEXANDER* INSTRUCTION

The primary issue for resolution by this Court is whether the appellant is entitled to a new trial based upon the giving of an alibi instruction to the jury that the appellant contends unconstitutionally shifted the burden of proof from the prosecution to the appellant. The questioned instruction reads as follows:

> The Court instructs the jury that where the State of West Virginia has established a prima facie case and the defendant relies upon the defense of alibi, the burden is upon the defendant to prove it, not beyond a reasonable doubt, nor by a preponderance of the evidence,

1. The balance of the appellant's assignments of error are without merit and do not warrant further discussion: the prosecution failed to timely provide the appellant with exculpatory materials, *see* syl. pt. 5, *State v. Hatfield,* 169 W.Va. 191, 286 S.E.2d 402 (1982) (non-disclosure by prosecution must be shown to be prejudicial to the extent that defendant is surprised and it hampers preparation of his case); the trial court erred when it admitted into evidence certain hearsay statements between White and Gallo, *see State v. Louk,* 171 W.Va. 639, 301 S.E.2d 596, 599 (1983) (admissibility of evidence generally within sound discretion of the trial court); the trial court erred when it denied the appellant's request for a second jury view of the Trailduster, *see W.Va.Code,* 56–6–17 [1931], syl. pt. 5, *State v. Beacraft,* 126 W.Va. 895, 30 S.E.2d 541 (1944), *see generally* 88 C.J.S. *Trial* § 47 (Cum.Supp.1983) (granting or refusal of motion for jury view of object involved in criminal prosecution is within the sound discretion of the trial court); the trial court erred when it allegedly abandoned individual voir dire of the jury panel, *see* syl. pt. 2, *State v. Pendry,* 159 W.Va. 438, 227 S.E.2d 210 (1976), *overruled on other grounds, Jones v. Warden, West Virginia Penitentiary,* 161 W.Va. 168, 241 S.E.2d 914, 916 (1978) (the methods and procedures used during voir dire are within the sound discretion of the trial court); the trial court erred when it denied the appellant's motion for a change of venue, *see* syl. pt. 4, *State v. Hall,* 171 W.Va. 212, 298 S.E.2d 246 (1982) (granting of motion for change of venue is within the sound discretion of the trial court); the trial court erred when it questioned various alibi witnesses of the appellant, *see* syl. pt. 4, *State v. Burton,* 163 W.Va. 40, 254 S.E.2d 129 (1979) (trial court may intervene in trial process but may not "intimate any opinion" on a material issue); the trial court erred

when it commented upon the relevancy of certain testimony in front of the jury, *see* syl. pt. 5, *State v. Wotring,* 167 W.Va. 104, 279 S.E.2d 182 (1981) (not reversible error if comment does not go to material issue bearing on witness' credibility); the trial court erred when it failed to exclude from evidence the out-of-court identification of the vehicle alleged to have been used in the commission of the crime, *see State v. Louk, supra;* the appellant is entitled to acquittal because the trial court ruled inconsistently in the subsequent trials of the appellant's co-indictees and because his co-indictees were acquitted, *see Keith v. Leverette,* 163 W.Va. 98, 254 S.E.2d 700, 702 (1979), *see generally* 24 C.J.S. *Criminal Law* § 1452 (Cum.Supp.1983) (acquittal of co-indictees on merits may affect the appellant only on a conspiracy charge); the trial court erred when it denied the appellant's motion for a new trial based upon the insufficiency of the circumstantial evidence and based upon newly discovered evidence, *see* syl. pts. 1–4, *State v. Meadows,* 172 W.Va. 847, 304 S.E.2d 831 (1983) (evidence must be "manifestly inadequate" with "consequent injustice" being done to warrant reversal upon insufficiency of evidence and in the case of circumstantial evidence, guilt must be proved to the exclusion of every reasonable hypotheses of innocence), syllabus, *State v. Frazier,* 162 W.Va. 935, 253 S.E.2d 534 (1979) (new evidence must be, *inter alia,* such as to bring about an opposite result at a second trial and not merely cumulative); and, the cumulative effect of all the above assignments of error warrant reversal of the appellant's conviction by this Court, *see* syl. pt. 5, *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550 (1972) (cumulative effect of assigned errors must be such as to deprive the defendant of a fair trial).

but by such evidence, and to such a degree of certainty, as will, when the whole evidence is considered, create and leave in the mind of the jury a reasonable doubt as to the guilt of the defendant.

In substantially identical form, the above instruction was approved by this Court in *State v. Alexander*, 161 W.Va. 776, 245 S.E.2d 633 (1978). In *Alexander* we stated that although in West Virginia "[a]libi is an affirmative defense ... [it] ... does not relieve the prosecution of proving beyond a reasonable doubt the actual presence of the accused at the time and place of the commission of the crime when personal presence is essential thereto." 161 W.Va. at 781, 245 S.E.2d at 637.[2] We therefore held that it was not improper for a trial court to instruct a jury "that defendant had a burden to prove his [alibi] defense sufficiently to create a reasonable doubt." *Id., citing State v. Pendry*, 159 W.Va. 738, 227 S.E.2d 210 (1976), *overruled on other grounds, Jones v. Warden, West Virginia Penitentiary*, 161 W.Va. 168, 241 S.E.2d 914, 916 (1978).

Approximately two weeks after the appellant in this case was convicted, the United States Court of Appeals for the Fourth Circuit in the case of *Adkins v. Bordenkircher*, 674 F.2d 279 (4th Cir.), *cert. denied*, 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982), determined that the *Alexander* instruction was invalid. In so holding, the court in *Adkins* criticized this Court's characterization of alibi as an affirmative defense stating that it improperly shifts the burden of persuasion from the prosecution to the defendant with respect to alibi contrary to the definition of an affirmative defense as set forth in *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). It appears that the court in *Adkins*, therefore, invalidated the *Alexander* instruction because it is contrary to the doctrines of *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) and *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), inasmuch as the court concluded that it unconstitutionally shifts the burden of proving every element of a crime beyond a reasonable doubt from the prosecution to the defendant.[3] However, the court in *Adkins* also made reference in a footnote that the challenged instruction should be struck down, in any event, "[b]ecause the alibi instruction could mislead reasonable jurors in the proper allocation of the burden of persuasion...." 674 F.2d at 282 n. 7, *citing Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). *See also Simmons v. Dalsheim*, 543 F.Supp. 729 (S.D.N.Y.1982), *aff'd*, 702 F.2d 423 (2d Cir.1983); *Stump v. Bennett*, 398 F.2d 111 (8th Cir.), *cert. denied*, 393 U.S. 1001, 89 S.Ct. 483, 21 L.Ed.2d 466 (1968).[4]

**2.** In West Virginia, although alibi has long been characterized as an affirmative defense, the prosecution has always had the burden of proving every element of the charge beyond a reasonable doubt. *See* syl. pt. 1, *State v. Withrow*, 142 W.Va. 522, 96 S.E.2d 913 (1957); syl. pt. 2, *State v. Young*, 134 W.Va. 771, 61 S.E.2d 734 (1950); syl. pt. 1, *State v. Peterson*, 132 W.Va. 99, 51 S.E.2d 78 (1948); syl. pt. 2, *State v. Aliff*, 122 W.Va. 16, 7 S.E.2d 27 (1940); syl. pt. 3, *State v. Lowry*, 42 W.Va. 205, 24 S.E. 561 (1896). *See generally* 1 H. Lee, *The Criminal Trial in the Virginias* §§ 357 & 369 (2d ed. 1940). However, this Court recognizes that this characterization of alibi as an affirmative defense places West Virginia in the minority. *See, e.g., Doisher v. State*, 632 P.2d 242 (Alaska App.1981); *Harkness v. State*, 267 Ark. 274, 590 S.W.2d 277 (1979). *See generally* 1 C. Torcia, *Wharton's Criminal Law* § 43 (Cum.Supp.1983); 22 C.J.S. *Criminal Law* § 40 (Cum.Supp.1983); 22A C.J.S. *Criminal Law* § 574 (Cum.Supp.1983).

**3.** The landmark cases of *Mullaney v. Wilbur, supra*, and *In re Winship, supra*, dictate that it is the duty of the prosecution to prove beyond a reasonable doubt every element of a crime with which a defendant is charged in a criminal prosecution and that such a burden may never be shifted to the defendant. However, in *Patterson v. New York, supra*, the United States Supreme Court held that the burden of persuasion may be shifted to the defendant when the defendant asserts an affirmative defense. The definition of an affirmative defense, as set forth in *Adkins v. Bordenkircher, supra*, is one that "'does not serve to negative any facts of the crime which the State is to prove in order to convict of [the crime charged.]'" 674 F.2d at 282, *quoting Patterson v. New York*, 432 U.S. at 207, 97 S.Ct. at 2325, 53 L.Ed.2d at 290.

**4.** We note that regardless of whether a jurisdiction characterizes alibi as an affirmative defense, courts are not in agreement as to the extent to which a defendant must carry the burden of persuasion with respect to the defense of alibi since the United States Supreme Court's decision in *Patterson v. New York, supra*.

The instructions in the case before us, when read as a whole, clearly informed the jury that the prosecution had the burden of proving every element of the crime with which the appellant was charged beyond a reasonable doubt and that the appellant was presumed to be innocent. *See infra* note 9. In addition, as we noted in *Alexander, supra,* historically such a burden has always been upon the prosecution regardless of whether the defendant raises alibi as a defense. *See supra* note 2. The prosecution in the case before us was not relieved of its legal burden to prove every element of the crime beyond a reasonable doubt as required by *In re Winship, supra,* nor was any portion of that legal burden shifted to the defendant in violation of *Mullaney v. Wilbur, supra,* nor could it create confusion under *Sandstrom, supra.*

In deference to the United States Court of Appeals for the Fourth Circuit, we will follow the result reached in *Adkins.* For reasons we have stated in this opinion, we believe that it reached an incorrect result when it held the alibi instruction contained in *Alexander* to be constitutionally defective under either the *Mullaney* approach or the *Sandstrom* approach. In any event, if we choose to disregard the opinion of the court in *Adkins,* we would create the problem of sustaining convictions in the state court with predictable release through habeas corpus in the federal court.

■ Accordingly, we hold that because of the holding in *Adkins v. Bordenkircher, supra, State v. Alexander, supra,* is overruled to the extent that it permits the giving of an instruction that places the burden upon the defendant to prove his alibi defense so that it creates a reasonable doubt in the mind of the jury as to his guilt.

## B. RETROACTIVITY

Our invalidation of the *Alexander* instruction presents us with another practical problem. Many habeas corpus petitions may be filed in the state court system by prisoners in whose trials such an instruction was given. In the case now before us the appellant objected to the invalid alibi instruction at trial on the basis that it unconstitutionally shifted a portion of the prosecution's burden to the appellant. Therefore, he preserved his error on appeal. Inasmuch as the court in *Adkins* failed to address the retroactivity of its decision with respect to the *Alexander* instruction, we must determine whether our holding in the present case will be given full retroactive application.[5]

The most recent pronouncement by this Court concerning the retroactivity of decisions invalidating instructions given in a

---

We do not dispute, as some jurisdictions admonish, that "alibi instructions should contain adequate safeguards against jury confusion and should indicate that the burden of proof remains on the government despite disbelief of the alibi witnesses." *United States v. Fortes,* 619 F.2d 108, 123 (1st Cir.1980). The "alibi defense frequently poses the risk that if the alibi evidence is disbelieved, the defense will backfire, leading the jury to convict because of the failure of the defense rather than because the evidence introduced by the government has satisfied the jury of the defendant's guilt beyond a reasonable doubt." *Wright v. Smith,* 569 F.2d 1188, 1191 (2d Cir.1978).

Some courts, however, have not adhered to such a strict rule. In *Smith v. Anderson,* 505 F.Supp. 642, 644–45 (E.D.Mich.1980), *aff'd,* 689 F.2d 59 (6th Cir.1982), the United States District Court for the Eastern District of Michigan approved an alibi instruction that informed the jury it could consider the fact that the defendant had presented no alibi witnesses to corroborate his alibi defense but if it had a reasonable doubt as to his guilt he should be acquitted. *See also*

*Whalen v. Johnson,* 438 F.Supp. 1198, 1203 (E.D. Mich.1977) (the instruction that "an alibi is sometimes easy to prove and hard to disprove" was not burden shifting). Furthermore, the District of Columbia Court of Appeals in *Forbes v. United States,* 390 A.2d 453 (D.C.1978), held that the following instruction was not burden shifting: "If this evidence of the defendant, considered in its entirety, is sufficient to cause you to have a reasonable doubt as to whether the defendant was present at the time and place alleged, you must find the defendant not guilty." 390 A.2d at 458.

5. Full retroactivity is defined in syllabus point 2 of *State v. Gangwer,* 168 W.Va. 190, 283 S.E.2d 839 (1981), as follows:

The concept of "full retroactivity" in a criminal case ordinarily means that the new rule is available not only for those cases in litigation or on appeal where the point has been preserved but is also available by way of collateral attack on a final judgment through a writ of habeas corpus.

criminal trial is found in *Bowman v. Leverette*, 169 W.Va. 589, 289 S.E.2d 435 (1982). In *Bowman*, we held, *inter alia*, that the invalidation of instructions under the concepts contained in *Sandstrom v. Montana, supra*, and *State v. O'Connell*, 163 W.Va. 366, 256 S.E.2d 429 (1979), was not to be given full retroactive application.[6] In so holding, the threshold step of the analysis in *Bowman* was to distinguish the type of instruction invalidated under *Sandstrom* with those instructions invalidated under the landmark cases of *Mullaney v. Wilbur, supra*, and *State v. Pendry, supra*.[7] The holdings of *Mullaney* and *Pendry* were given full retroactive effect in the cases of *Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), and *Jones v. Warden, West Virginia Penitentiary, supra*, respectively.

We made several distinctions between the *Sandstrom* type of instruction and those invalidated under the holdings of *Mullaney* and *Pendry*. First, we pointed out that the *Sandstrom v. Montana* type instruction did not have the "detailed recitation of facts that is found in the instructions in the *Mullaney* line of cases." 169 W.Va. at 600, 289 S.E.2d at 441. Second, it

was determined that "in the *Mullaney* line of cases the burden of proof was explicitly shifted to the defendant, i.e., the jury was instructed that there was an obligation on the part of the defendant to disprove some aspect of the case or else a presumption would provide that element of the State's case." *Id.* This was found not to be the case in the *Sandstrom* line of cases where "the jury was forcefully instructed that the defendant had no burden whatsoever and that the State had it all." 169 W.Va. at 600, 289 S.E.2d at 442. We found it relevant that "[t]he instruction in *Sandstrom v. Montana*, unlike the one in *Mullaney v. Wilbur*, did not explicitly shift the burden of proof to the defendant; nor was the *Sandstrom* instruction held to be a conclusive presumption...." *Id.* (citations omitted). As we noted in *Bowman*, the United States Supreme Court based its decision in *Sandstrom* upon the fear that the jury could misinterpret the instruction as opposed to the actual wording of the charge to the jury.[8]

If we must hold that the *Alexander* instruction is unconstitutional as a result of *Adkins v. Bordenkircher*, then in the case now before us we further conclude that the

---

**6.** The instruction that was at issue in *Bowman v. Leverette, supra*, reads as follows: " 'The Court instructs the jury that the law is that a person is presumed to intend that which he does or which is the natural and necessary consequence of his own act.' " 169 W.Va. at 599, 289 S.E.2d at 440. Very similar instructions had been struck down in *Sandstrom v. Montana, supra*, and *State v. O'Connell, supra*, therefore, the issue for resolution in *Bowman* was whether to give *Sandstrom* and *O'Connell* retroactive application.

**7.** The instruction invalidated in *State v. Pendry, supra*, states as follows:

The Court instructs the jury that the law is that a man is taken to intend that which he does, or which is the natural and necessary consequences of his own act; and therefore, if they believe from the evidence that Parker Lee Pendry shot and killed the deceased, Cecil Hagerman, by the deliberate use of an instrument likely to produce death, under the circumstances, then the presumption of the law, arising in absence of proof to the contrary, is that he intended the consequences that resulted from said use of said deadly instrument. 159 W.Va. at 749, 227 S.E.2d at 218.

In *Mullaney v. Wilbur, supra*, the United States Supreme Court invalidated an instruction that emanated from Maine which stated:

"In all cases where the unlawful killing is proved beyond a reasonable doubt, and where there is nothing in the circumstances of the case to explain, qualify or palliate the action, the law presumes it to have been done with malice aforethought. And if the accused, that is the defendant, would reduce the crime below the degree of murder, the burden is upon him to rebut the inference which the law raises from the act of killing, by evidence in defense.... It means that from all the evidence in the case he must be able to satisfy you by a fair preponderance of the evidence that ... although he killed and although he killed unlawfully, if such is the case, he killed in the heat of passion upon sudden provocation."

*Bowman v. Leverette*, 169 W.Va. at 597–598 n. 5, 289 S.E.2d at 440 n. 5, *quoting Wilbur v. Mullaney*, 473 F.2d 943, 944 (1st Cir.1973).

**8.** As we also noted above, in *Adkins v. Bordenkircher, supra*, the United States Court of Appeals for the Fourth Circuit at least partially relied upon the holding in *Sandstrom v. Montana, supra*, when it concluded that the *Alexander* instruction was invalid.

alibi instruction that was given to the jury is dissimilar to the instructions in the *Mullaney* line of cases in much the same manner as the *Sandstrom* type of instruction. First, it is clear that under the distinctions drawn by this Court in *Bowman* between the *Sandstrom* type instructions and those invalidated by *Mullaney*, the instruction in this case does not have a "detailed recitation of the facts" as was found in *Mullaney*. Second, there is no explicit shifting of the burden of proving each element of the crime from the prosecution to the appellant nor does it reallocate any burdens contrary to those imposed by law. In *State v. Alexander, supra*, this Court only approved the challenged alibi instruction as long as it "does not relieve the prosecution of proving beyond a reasonable doubt the actual presence of the accused at the time and place of the commission of the crime when personal presence is essential thereto." 161 W.Va. at 781, 245 S.E.2d at 637. Moreover, as we found relevant in *Bowman*, the jury was otherwise "forcefully instructed that the defendant had no burden whatsoever and that the State had it all."[9] 169 W.Va. at 589, 289 S.E.2d at 442. For a discussion by the United States Supreme Court of current retroactivity tenets *see United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982).[10]

Because the instruction in the case before us is distinguishable from the *Mullaney v. Wilbur* type instruction, the retroactivity principles as set forth in *Bowman* must be applied to determine whether our decision with respect to the invalidation of the *Alexander* instruction should be given full retroactive effect.

In *Bowman*, after an extensive historical survey of United States Supreme Court precedent, we utilized the retroactivity doctrine as set forth in *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and its progeny. Review of the cases that followed *Linkletter* revealed that "[g]enerally, in all those cases the test has been essentially the same...." *Bowman*, 169 W.Va. at 604, 289 S.E.2d at 444. With subsequent variations in application, the United States Supreme Court in *Linkletter*

announced a three-pronged test by which it would decide whether a criminal decision based on the constitution would be given retroactive application: '[W]e must look to the purpose of the [new] rule; the reliance placed upon the [old] doctrine; and the effect on the administration of justice of a retrospective application of [the new rule].' 381 U.S. at 636, 85 S.Ct. at 1741.

*Bowman*, 169 W.Va. at 604, 289 S.E.2d at 444, *quoting Linkletter v. Walker, supra*.

The first prong of the *Linkletter* test, known as the "major purpose rule," has three aspects: "(1) the major purpose of the new rule must be to (2) correct a flaw that substantially impairs the truth-finding function of trial and (3) thereby raises serious questions about the reliability of past verdicts." *Bowman*, 169 W.Va. at 606, 289 S.E.2d at 444–45, *citing Williams v. United States*, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971). As we noted in *Bowman*, "[a]ll three aspects of the *Williams* test must be satisfied before the need to apply the second two prongs of the *Linkletter v. Walker* test is obviated...." *Bowman*, 169 W.Va. at 606, 289 S.E.2d at 445. "A new rule that merely collaterally enhances the integrity of the truth-finding process will not be applied retroactively

---

**9.** During the appellant's trial, the jury was extensively instructed on the burden of the prosecution. Some of these instructions, as contained in the charge to the jury, are as follows:

The burden is on the State of West Virginis [sic] to prove the guilt of the defendant beyond a reasonable doubt. The defendant is not required to prove his innocence.

\* \* \* \* \* \*

The burden is on the State to prove the guilt of the defendant beyond a reasonable doubt and the defendant, Robert Kopa, is not required to prove himself innocent. He is presumed by the law to be innocent of this

charge and this presumption remains with him throughout the entire trial.

\* \* \* \* \* \*

The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

**10.** *See generally* comment, *Bowman v. Leverette: Retroactivity of Criminal Procedure Decisions*, 85 W.Va.L.Rev. 273 (1983), for an analysis of *Bowman v. Leverette, supra*.

for that reason alone." *Id.* Furthermore, "[t]he question of whether a displaced rule has substantially impaired the truth-finding process requires the application of a balancing test." *Id.*[11]

The reasons offered in *Bowman* for declining to apply the rules in *Sandstrom v. Montana* and *State v. O'Connell* retroactively, are equally applicable to our invalidation of the *Alexander* instruction. We determined in *Bowman* that the "major purpose" of the *Sandstrom* rule is not to correct a substantial impairment of the truth-finding process because the "jury was not told that the State had a lesser burden of proof than that constitutionally required. Nor was it told that the defendant had any burden on any material element of the crime." *Bowman*, 169 W.Va. at 611, 289 S.E.2d at 447. Rather, the rule in *Sandstrom* is "to further effectuate the *Winship* doctrine by reducing the risk of possible jury misinterpretation of instructions that could lead to an *In re Winship*, or a *Mullaney v. Wilbur*, type of error." *Id.* Moreover, unlike *Mullaney* type instructions, retroactivity of *Sandstrom* and *O'Connell* would have resulted in "windfall benefits" in some cases in which the presence of a *Sandstrom* type instruction would have caused no unfairness to the defendant.

Similarly, as we noted above, the *Alexander* instruction does not lessen the burden upon the prosecution to prove every element of the crime beyond a reasonable doubt nor does it shift any portion of that burden to the defendant. Assuming, *arguendo*, that the *Alexander* instruction is unconstitutional, as we previously stated, its infirmity is more closely related to a *Sandstrom* type instruction rather than those of the magnitude invalidated under *Mullaney*. The decision in the case before

us is also one intended to "further effectuate" the doctrine of *In re Winship* and *Mullaney*. As we stated in *Bowman:* "Our system of criminal justice could not operate if the effective presumption was that juries consistently misinterpret the instructions given to them by the court." 169 W.Va. at 612, 289 S.E.2d at 448. Inasmuch as we find that the major purpose of our decision with respect to the *Alexander* instruction is not to "correct a flaw that substantially impairs the truth-finding function of trial and ... thereby raises serious questions about the reliability of past verdicts," 169 W.Va. at 606, 289 S.E.2d at 444–45, further inquiry into the three-pronged test of *Linkletter v. Walker, supra*, is unnecessary.

However, the reliance that courts have placed on the use of the *Alexander* instruction "also militates against the retroactive application of the rule announced in that case." *Bowman*, 169 W.Va. at 614, 289 S.E.2d at 448. The law of West Virginia, as it was stated in the *Alexander* instruction with respect to alibi, has been used by this jurisdiction since before the turn of the century. *See* 1 H. Lee, *The Criminal Trial in the Virginias* §§ 357 & 369 (2d ed. 1940). *See also supra* note 2. More importantly, to give full retroactive application to our holding in the case now before us would have a severe detrimental effect on the administration of justice as courts would attempt to determine whether the presence of such an instruction in the many cases in which it must have been given, constituted harmless error. *Bowman*, 289 S.E.2d at 449. *Cf. Connecticut v. Johnson*, 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983) (the United States Supreme Court has split as to whether the giving of a *Sandstrom* type instruction could ever be harmless error).

**11.** In *Bowman* we noted that the United States Supreme Court has refused to grant retroactive application to some of its most important criminal procedure decisions by use of the balancing test. For example, in *Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), the Court declined to grant retroactive application to "the new rules" established in *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Although the Court in *Johnson* recognized the importance of these decisions, protecting rights under the Fifth Amendment to the United States Constitution, it declined retroactive application because they "'encompass situations in which the danger is not necessarily as great as when the accused is subjected to overt and obvious coercion....'" *Bowman*, 169 W.Va. at 607, 289 S.E.2d at 445, *quoting Johnson v. New Jersey*, 384 U.S. at 730, 86 S.Ct. at 1779, 16 L.Ed.2d at 890.

■ Therefore, the invalidation of the instruction approved in *State v. Alexander,* *supra,* that places the burden upon the defendant to prove his alibi defense to the extent that a reasonable doubt is created in the mind of the jury as to his guilt is only applicable to those cases currently in litigation or on appeal where the error has been properly preserved at trial. The holding we reach in the case now before us will not be given full retroactive effect.

## II

## INSTRUCTION ON POSSIBLE VERDICTS

The appellant further contends that the trial court erred when it instructed the jury that it could return the following possible verdicts: first degree murder, first degree murder with a recommendation of mercy and not guilty. The appellant argues that the inclusion of the verdict of first degree murder with a recommendation of mercy in the face of his objection to such an instruction gave the jury a compromise verdict in violation of *W.Va.Code,* 62–3–15 [1965].[12]

■ The record indicates that during the discussion of the proposed instruction the appellant advocated a bifurcated proceeding so that the jury could consider a recommendation of mercy only after it had come to a determination of the appellant's guilt. We find this to be without merit under the principles set forth in *State ex rel. Leach v. Hamilton,* W.Va., 280 S.E.2d 62 (1980). In *Leach,* this Court specifically approved the "unitary trial procedure" of *W.Va.Code,* 62–3–15 [1965], to determine a defendant's guilt and the applicable punishment for first degree murder.

Moreover, this Court has made it mandatory for a trial court to instruct a jury that it may add a recommendation of mercy to a first degree murder verdict. As this Court stated in syllabus point 3 of *State v. Lindsey,* 160 W.Va. 284, 233 S.E.2d 734 (1977):

In a case in which a jury may return a verdict of guilty of murder of the first degree, it is the mandatory duty of the trial court, without request, to instruct the jury that to such verdict it may add a recommendation of mercy, that such recommendation would mean that the defendant could be eligible for parole consideration only after having served a minimum of ten years and that otherwise the defendant would be confined to the penitentiary for life without possibility of parole.

*See also* syl. pt. 3, *State v. Loveless,* 139 W.Va. 454, 80 S.E.2d 442 (1954).

■ We hold that it is the mandatory duty of the trial court to instruct the jury that it may add a recommendation of mercy to a verdict of murder of the first degree and such duty shall be fulfilled by the trial court over the objection of the defendant unless it affirmatively appears from the record that the defendant understands the consequences of his action. *See W.Va. Code,* 62–3–15 [1965]. We perceive few, if any, circumstances under which a defendant would not want the jury to consider a recommendation of mercy during its deliberations in a trial for first degree murder. In the case before us, the trial court did not err when it included first degree murder with a recommendation of mercy among the possible verdicts and instructed the jury to that effect.

## III

## IMPEACHMENT OF ONE'S OWN WITNESS

The appellant further asserts that the trial court erred when it permitted the prosecution to impeach its own witness with a prior inconsistent statement that was unsworn and which the prosecution knew would be refuted at trial. During trial the prosecution called as one of its own witnesses the appellant's girlfriend, Pam Glasure. In her original statement made to the police, Glasure stated that she

---

12. *W.Va.Code,* 62–3–15 [1965], provides that if a person is found guilty by a jury of first degree murder he shall be sentenced to life imprisonment in the penitentiary without a possibility of parole. However, the statute further provides "that the jury may, in their discretion, recommend mercy...."

was the one who placed the anonymous telephone call to the local rescue squad directing them to send an ambulance to the address of the victim. She stated that she made the telephone call upon the instructions of the appellant. Glasure, however, at the preliminary hearing and before the grand jury, denied the truth of that portion of her statement as she did at the trial of the appellant. The trial judge then permitted the prosecution to impeach her testimony with the prior inconsistent statement over the objection of the appellant.

In West Virginia, "[t]he general rule is that one may not impeach his own witness absent entrapment, hostility or surprise." *State v. Wayne*, 162 W.Va. 41, 245 S.E.2d 838, 841 (1978). *See also* syl. pt. 5, *State v. Ferguson*, 165 W.Va. 529, 270 S.E.2d 166 (1980); syl. pt. 11, *Hartley v. Crede*, 140 W.Va. 133, 82 S.E.2d 672 (1954); syl. pt. 2, *State v. Blankenship*, 137 W.Va. 1, 69 S.E.2d 398 (1952), *overruled on other grounds, State v. McAboy*, 160 W.Va. 497, 236 S.E.2d 431, 432 (1977); syl. pt. 2, *Lambert v. Armentrout*, 65 W.Va. 375, 64 S.E. 260 (1909); syl. pt. 2, *Stout v. Sands*, 56 W.Va. 663, 49 S.E. 428 (1904). *See generally* 3A *Wigmore on Evidence* §§ 896–918 (Chadbourn Revision Supp.1981). Pursuant to this well founded principle, the trial judge determined that the appellant's girlfriend had become hostile toward the prosecution during her direct examination and allowed the prosecution to impeach her with the prior inconsistent statement. At the request of the appellant, however, the jury was admonished by the trial judge that the prior inconsistent statement of the girlfriend could only be considered for credibility purposes and not for the truth of the matter asserted.

The appellant cites many cases to support the proposition that a party may not impeach his own witness, however, we believe that the better rule is embodied in Rule 607 of the Federal Rules of Evidence which simply states: "The credibility of a witness may be attacked by any party, including the party calling him." The purpose for the rejection of the previous rule is set forth in the Notes of the Advisory Committee which state:

The traditional rule against impeaching one's own witness is abandoned as based on false premises. A party does not hold out his witness as worthy of belief, since he rarely has a free choice in selecting them. Denial of the right leaves the party at the mercy of the witness and the adversary.

*Fed.R.Evid. 607* advisory committee notes. *See United States v. Freeman*, 302 F.2d 347 (2d Cir.1962) (criticizing the traditional rule). *See generally* F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 22 (Cum.Supp.1983).

It should be noted that the adoption of Rule 607 does not free either party to introduce otherwise inadmissible evidence into trial under the guise of impeachment. *See United States v. Miller*, 664 F.2d 94 (5th Cir.1981), *cert. denied*, 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 106 (1982); *United States v. Morlang*, 531 F.2d 183 (4th Cir. 1975); *United States v. Crowder*, 346 F.2d 1 (6th Cir.1964), *cert. denied*, 382 U.S. 909, 86 S.Ct. 249, 15 L.Ed.2d 161 (1965). This Court stated in syllabus point 1 of *State v. Spadafore*, 159 W.Va. 236, 220 S.E.2d 655 (1975):

In a criminal case prior out-of-court statements made by a witness cannot be admitted into evidence for the truth of the matter asserted unless they were made under oath in a judicial atmosphere during the taking of a deposition or at a former trial and were subject at that time to cross-examination by the opposing party's counsel.

As we noted above, the trial judge admonished the jury to only consider the prior inconsistent statement of the appellant's girlfriend for credibility purposes and not for its truth. Therefore, the trial court did not violate the standards set forth in *State v. Spadafore, supra. See also State v. Cochran*, 172 W.Va. 715, 310 S.E.2d 476 (1983).

With respect to the impeachment testimony of the appellant's girlfriend by her prior inconsistent statement, we hold that the trial court did not err when it allowed the prosecution to impeach its own witness with a prior inconsistent statement and limited the statement's value to the credibility of the witness. To the extent

that prior cases expound a rule contrary to Rule 607 of the Federal Rules of Evidence they are overruled.

IV

## THE OUT–OF–COURT EXPERIMENT

The appellant further asserts that the trial court erred when it refused to admit into evidence the taped results of an out-of-court voice experiment conducted by defense counsel. The experiment was calculated to demonstrate that the rescue squad member who received the anonymous telephone call directing him to send an ambulance to the address of the victim, could not identify the voice of the caller as that of Glasure, the appellant's girlfriend. The State argues that the trial court did not abuse its discretion when it refused to admit the results of the experiment because the conditions under which the experiment was conducted were not similar to the conditions of the actual telephone call.

 The results of an out-of-court experiment will not be admitted into evidence unless the party seeking to admit such evidence demonstrates that the conditions under which the experiment was conducted were substantially similar to those of the original conditions sought to be recreated and the question of whether to admit such evidence for consideration by the jury is within the sound discretion of the trial court. Syl. pt. 6, *Spurlin v. Nardo*, 145 W.Va. 408, 114 S.E.2d 913 (1960); syl. pt. 3, *State v. Newman*, 101 W.Va. 356, 132 S.E. 728 (1926). *See also* syl. pt. 5, *State v. Taft*, 144 W.Va. 704, 110 S.E.2d 727 (1959); syl. pt. 2, *McClain v. Marietta Torpedo Co.*, 84 W.Va. 139, 100 S.E. 87 (1919); *See generally* 22A C.J.S. *Criminal Law* § 645(1) (Cum.Supp.1983). However, "[w]hile there is no fixed standard of determining the degree of similarity required, the general rule is that the conditions should be substantially or proximately similar, and that the similarity need extend only to those conditions which govern or substantially affect the result." Syl. pt. 4, *State v. Newman, supra.*

At the trial, the rescue squad member testified that at approximately 4:00 a.m. on the morning of September 15, 1981, he was awakened by a telephone call while on voluntary duty at the rescue squad. He indicated that during the seven to eight second telephone conversation, a female voice directed him to dispatch an ambulance to 136 Pine Street, the street address of the victim.

The experiment in question was conducted on January 8, 1982, at approximately 11:30 a.m. from the office of the defense counsel. The defense counsel's secretary placed a telephone call to the rescue squad office at which time the rescue squad member consented to listen to the voices of five different women, including Glasure's. He then attempted to identify one of them as the voice of the anonymous caller who had made the call some four months earlier. In addition to the five women, both defense counsel and a private investigator were present for the experiment.

Each woman spoke the following words over a telephone: "Send an ambulance to 136 Pine Street and hurry." The women were instructed to speak those words in a manner "as if they were actually calling an ambulance." At the conclusion of the experiment the rescue squad member requested a repeat of two of the voices and after compliance, he chose a voice other than Glasure's as the one most similar to that of the anonymous caller.

 The trial court did not err when it refused to admit into evidence the taped results of the out-of-court voice experiment proffered by the appellant. The validity of the results are questionable due mainly to the fact that they were not conducted under substantially similar circumstances as the anonymous telephone call of the early morning hours of September 15, 1981. In addition, the lack of participation by the prosecution and the late hour of its offering to the trial court all cast an aura of unreliability over the results. Therefore, the trial court did not abuse its discretion when it excluded the taped results of the out-of-court voice experiment from consideration by the jury.

## V

## OTHER EVIDENTIARY ERRORS

■ The appellant assigns additional errors that are also evidentiary in nature and involve discretionary rulings by the trial court as to their admissibility. It is well established in West Virginia that "[r]ulings on the admissibility of evidence are largely within a trial court's sound discretion...." *State v. Louk*, 171 W.Va. 639, 301 S.E.2d 596, 599 (1983). Consequently, this Court has held:

" 'The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion.' Syl. pt. 5, *Casto v. Martin*, 159 W.Va. 761, 230 S.E.2d 722 (1976) citing Syl. pt. 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955)." Syllabus Point 2, *State v. Rector*, 167 W.Va. 748, 280 S.E.2d 597 (1981).

Syl. pt. 3, *State v. Oldaker*, 172 W.Va. 258, 304 S.E.2d 843 (1983). *See generally* 1 *Wigmore on Evidence* § 16 (Chadbourn Revision Supp.1981); 5 C.J.S. *Appeal and Error* § 1556 (Cum.Supp.1983); 5 Am. Jur.2d *Appeal and Error* § 881 (Cum. Supp.1983).

The appellant contends that the trial court erred when it allowed a knife to be displayed in the courtroom upon the assurance of the prosecution that it would be connected to the murder of Edna Karver. The knife in question had been found in the Plymouth Trailduster that the appellant and Gallo had borrowed the night of the murder. The owner of the Trailduster, Joyce Cooper, testified that the knife was not in the vehicle prior to loaning it to the appellant. Sergeant William Beatty of the Weirton Police Department testified that he discovered the knife in the vehicle shortly after its impoundment.

The record indicates that scientific analysis revealed no blood on the knife. At the trial, the medical examiner testified that the knife could have been the murder weapon, however, on cross-examination the appellant established through the testimony of the medical examiner that five knives from the courthouse kitchen could also have inflicted the deadly wounds of the victim. Upon motion of the prosecution to admit the knife into evidence the appellant objected and the knife was excluded from the trial. The trial court later denied the appellant's motion for a mistrial based upon the prosecution's use of the knife.

■ We find that the trial court did not abuse its discretion when it allowed the knife to be displayed in the courtroom but later excluded it from evidence.

The appellant further argues that the trial court erred when it denied the appellant's pre-trial motion to exclude certain evidence from trial. Specifically, the appellant sought to exclude the pair of gloves found in the Trailduster, one of which had a bloodstain "the size of a thumbnail," a pair of the appellant's tennis shoes, one of which had a speck of blood on it, and the expert testimony surrounding the identification of that blood.

■ The appellant contends that the prejudicial effect of those items outweighs their probative value and therefore, renders them irrelevant. The appellant also contests the relevance of the expert testimony identifying the bloodstains because the expert indicated that the amount of blood found on these items was only sufficient to identify it as human and was too limited in its amount to specify its type or group. We hold that the trial court did not abuse its discretion when it denied the appellant's motion to exclude such evidence.

For the foregoing reasons, the judgment of the Circuit Court of Hancock County is hereby reversed and this case is remanded to that court for further proceedings consistent with this opinion.

Reversed and remanded.