517 S.E.2d 27

**Eric Calvin CECIL and Esther M. Cecil, Plaintiffs Below, Appellees,**

v.

**D AND M INCORPORATED, a West Virginia Corporation; J.H. Fletcher & Co., the Successor of D and M Incorporated; and Service Machine Company, a West Virginia Corporation, d/b/a SMC Electrical Products, Inc., Defendants Below, Appellees,**

**Consolidation Coal Company, Defendant Below, Appellant.**

**No. 25330.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 13, 1999.

Decided June 15, 1999.

William Flanigan, Esq., Derek Craig Swope, Esq., Sanders, Austin, Swope & Flanigan, Princeton, West Virginia, Attorneys for the Cecils.

W. Warren Upton, Esq., Mychal S. Schulz, Esq., Jackson & Kelly, Charleston, West Virginia, Attorneys for Consolidation Coal Company.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of McDowell County entered on August 22, 1997. The appellee and plaintiff below, Eric Calvin Cecil, an employee of the appellant and defendant below, Consolidation Coal Company (hereinafter "Consolidation"), was injured when two rail vehicles collided in Consolidation's Amonate Mine. Mr. Cecil and his wife filed a complaint asserting a "deliberation intention" claim pursuant to W.Va.Code § 23–4–2(c)(2)(ii) (1991)[1] against Consolidation and products liability claims against J.H. Fletcher & Co. (hereinafter "Fletcher"), and D and M, Inc. (hereinafter "D & M"). Prior to trial, the Cecils settled the product liability claims with Fletcher and D & M for $290,000.00. The case proceeded to trial against Consolidation and resulted in a judgment in favor of the Cecils in the amount of $617,593.46.[2]

In this appeal, Consolidation contends that the circuit court erred by (1) allowing certain evidence to be presented at trial; (2) denying its motion for judgment notwithstanding the verdict; and (3) refusing to reduce the verdict by the amount of the settlements between the Cecils and Fletcher and D & M and the amount of future medical expenses that will be incurred by Mr. Cecil. This Court has before it the petition for appeal, the designated record, and the briefs and argument of counsel. For the reasons set forth below, we affirm, in part, and reverse, in part, the final order of the circuit court.

I.

This case arises out of an accident that occurred on January 15, 1993, in Consolidation's Amonate Mine in McDowell County. At that time, Eric Calvin Cecil, a roof bolter, was working in the B–Right Section of the mine. In order to reach that section of the mine, the miners rode in rail vehicles known as "manbuses." From the main track, the manbuses traveled down a 450–foot slope with a 10% grade to a stop block where the men exited the vehicle and walked the remaining distance to the area where they were working.

Just prior to the accident, Mr. Cecil and the other members of his crew had stopped working because a continuous miner had broken down. The crew had walked back to the manbus so they could exit the mine. Mr. Cecil was the first to arrive at the manbus, and he boarded and sat down to wait on the other men. After some of the other men had boarded, the driver of the manbus, Gene Hall, energized the vehicle and activated the radio. While waiting for clearance to exit the mine, shouts of "runaway" were heard over the radio and a light was seen coming down the B–Right section of the track. The light was coming from another small rail vehicle know as a "mechanics jeep" driven by Paul Pendleton, a maintenance foreman for Consolidation.

According to Mr. Pendleton, he was taking a part for the broken continuous miner to the B–Right section. He had received clearance to travel down the track and as he proceeded down the B–Right slope, he applied the electric brake, but the vehicle failed to slow down. He then grabbed the manual service brake, but it did not work either. At this point, Mr. Pendleton saw the lights of the manbus at the end of the track. He yelled

---

1. W.Va.Code § 23–4–2 was amended in 1994. However, the specific language of W.Va.Code § 23–4–2(c)(2)(ii) has remained unchanged.

2. The jury actually rendered a verdict in the amount of $925,000.00 to which the circuit court added pre-judgment interest. However, as discussed in more detail below, the circuit court then reduced the verdict by granting Consolidation an offset for workers' compensation benefits received by Mr. Cecil and a remittitur relating to lost wages.

"runaway" into the radio several times and then jumped out of the vehicle.

Mr. Cecil did not understand what was happening when he first heard the shouts on the radio, nor did he see the lights of the mechanics jeep. As soon as he realized what was happening though, he attempted to exit the manbus. Unfortunately, Mr. Cecil was unable to get off the vehicle before it was struck by the mechanics jeep. He was seriously injured in the collision.[3]

Following the accident, Mr. Cecil and his wife filed a complaint asserting a "deliberate intention" claim against Consolidation and product liability claims against Fletcher and D & M. The product liability claims centered around the design of the mechanics jeep. Prior to trial, the Cecils settled with Fletcher and D & M for $290,000.00. A jury trial was held January 29, 1996 through February 6, 1996, and resulted in a verdict in favor of the Cecils in the amount of $1,017,-440.65. Thereafter, Consolidation filed several post trial motions.

On April 4, 1997, the circuit court granted an offset in the amount of $255,216.00 pursuant to W.Va.Code § 23–4–2(b) for the present-day value of the permanent total disability award granted to Mr. Cecil under the Workers' Compensation Act. The court also reduced the verdict by $70,766.02 which represented the total amount of past medical expenses incurred by Mr. Cecil that was paid by or through the Workers' Compensation Act. The circuit court further determined that Consolidation was not entitled to a reduction in the verdict for Mr. Cecil's future medical expenses because there was no evidence that the jury made an allowance in its verdict for this amount.[4] Finally, the court denied an offset of $290,000.00, representing the good faith settlement between the Cecils and Fletcher and D & M. Accordingly, the judgment amount entered against Consolidation was $760,593.46.

On July 25, 1997, the circuit court denied Consolidation's motion for judgement notwithstanding the verdict and motion for a new trial. However, the circuit court reserved a remittitur issue raised through the motions. On August 22, 1997, the court granted Consolidation a remittitur for the difference between the jury award of $650,-000.00 for lost wages and the calculation of $507,000.00 for lost wages by the Cecils' expert economist, Dr. Ben Tuchi. Accordingly, the jury verdict was reduced by $143,000.00 and a final judgment of $617,593.46 was entered. This appeal followed.

## II.

We first consider Consolidation's contention that the circuit court erred by allowing the Cecils to present certain evidence at trial. Specifically, Consolidation avers that the circuit court should not have allowed the Cecils to offer evidence of other alleged runaway accidents at the Amonate Mine to prove that Consolidation had "subjective realization and an appreciation of the existence of [a] specific unsafe working condition" as set forth in W.Va.Code § 23–4–2(c)(2)(ii)(B). Consolidation also contends that the circuit court should not have permitted evidence of subsequent remedial measures taken by Consolidation after the accident.

We have previously held that "[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syllabus Point 6, *State v. Kopa,* 173 W.Va. 43, 311 S.E.2d 412 (1983). *See also* Syllabus Point 4, *Riggle v. Allied Chemical Corp.,* 180 W.Va. 561, 378 S.E.2d 282 (1989); Syllabus Point 5, *Grillis v. Monongahela Power Co.,* 176 W.Va. 662, 346 S.E.2d 812 (1986). "Thus, evidentiary decisions of a trial court are entitled to substantial deference." *McDougal v. McCammon,* 193 W.Va. 229, 235 n. 5, 455 S.E.2d 788, 794 n. 5 (1995).

Consolidation argues that testimony regarding prior runaway incidents at the Amonate Mine should have been excluded

---

**3.** The other men who were sitting next to Mr. Cecil escaped from the manbus before the collision occurred.

**4.** After the trial, the parties stipulated that Mr. Cecil will incur future medical expenses totaling $44,256.00.

from evidence pursuant to Rule 404(b) of the West Virginia Rules of Evidence.[5] Consolidation claims that the other runaway incidents were not "substantially similar" to the accident involving Mr. Cecil and therefore, this evidence should not have been considered by the jury to determine whether Consolidation had "subjective realization and an appreciation of the existence of such specific unsafe working condition." *Citing* Syllabus Point 3, in part, *Gable v. Kroger Co.*, 186 W.Va. 62, 410 S.E.2d 701 (1991) ("similar occurrence evidence must relate to accidents or injuries or defects existing at substantially the same place under substantially the same conditions").

The record indicates that the circuit court considered whether to exclude evidence of other alleged runaway accidents prior to trial pursuant to a motion in limine filed by Consolidation. Apparently, the Cecils planned to present evidence at trial of several other alleged runaway accidents that had occurred in the Amonate Mine. However, the circuit court struck part of the evidence finding that it was too remote and that the prejudicial effect would outweigh its probative value. The court did find that two prior alleged accidents were relevant to the plaintiffs' theory of the case and allowed that evidence to be introduced at trial. One runaway accident involved Consolidation's mine foreman, Danny Crutchfield. The other runaway accident involved two other Consolidation employees. After reviewing the trial testimony and the circuit court's ruling on this issue, we do not find that the circuit abused its discretion by allowing this evidence to be considered by the jury.

■ Consolidation also argues that the circuit court erred by allowing the Cecils to introduce evidence that it installed a derail device in the B–Right section of the mine following Mr. Cecil's accident. Consolidation contends that this evidence should have been excluded pursuant to Rule 407 of the West Virginia Rules of Evidence.[6] The trial transcript indicates that the circuit court permitted the Cecils to introduce this evidence under the "feasibility" exception contained in Rule 407. The record reveals that at trial Consolidation maintained that a derail device was not appropriate or necessary in this area of the mine. Given this fact, we do not find that the circuit abused its discretion by allowing this evidence to be presented to the jury.

■ Next, Consolidation contends that the circuit court erred by not granting its motion for judgment notwithstanding the verdict. In this regard, Consolidation argues that the evidence at trial failed to establish that Mr. Cecil was injured as a result of Consolidation's "deliberate intention." Consolidation maintains that the evidence at trial did not establish the stringent requirements of W.Va.Code § 23–4–2(c)(2)(ii)(A)–(E).

■ In Syllabus Point 1 of *Alkire v. First Nat'l Bank of Parsons*, 197 W.Va. 122, 475 S.E.2d 122 (1996), we discussed the appropriate standard for reviewing a circuit court's denial of a motion for judgment notwithstanding the verdict:

The standard of review recited in Syllabus Point 1 in *Mildred L.M. v. John O.F.*, 192 W.Va. 345, 452 S.E.2d 436 (1994) and in Syllabus Point 1 in *Barefoot v. Sundale Nursing Home*, 193 W.Va. 475, 457 S.E.2d 152 (1995), and their progeny, is clarified to read as follows: In reviewing a trial court's denial of a motion for judgment notwithstanding the verdict, it is not the task of the appellate court reviewing facts

---

5. W.Va. R. Evid. 404(b) provides, in pertinent part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

6. W.Va.R.Evid. 407 provides:

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

to determine how it would have ruled on the evidence presented. Its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, in ruling on a denial of a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the nonmoving party. If on review, the evidence is shown to be legally insufficient to sustain the verdict, it is the obligation of the appellate court to reverse the circuit court and to order judgment for the appellant.

See also Syllabus Point 1, *Dodrill v. Nationwide Mut. Ins. Co.*, 201 W.Va. 1, 491 S.E.2d 1 (1996). With this standard in mind, we now consider whether the evidence presented in this case supported the jury's verdict.

■ As noted above, the Cecils sought to hold Consolidation liable for Mr. Cecil's injuries based on "deliberate intention." In Syllabus Point 2 of *Mayles v. Shoney's Inc.*, 185 W.Va. 88, 405 S.E.2d 15 (1990), we held that: "A plaintiff may establish 'deliberate intention' in a civil action against an employer for a work-related injury by offering evidence to prove the five specific requirements provided in W.Va.Code § 23–4–2(c)(2)(ii) (1983)."[7] This statute requires a plaintiff to prove:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;

(C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and

(E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition.

W.Va.Code § 23–4–2(c)(2)(ii).

At trial, the Cecils generally maintained that a specific unsafe working condition existed because of the lack of a derail device on the B–Right section of track and that the lack of the derail device resulted in Mr. Cecil's injuries.[8] Anthony Sharkey, a mining engineer and consultant, testified on behalf of the Cecils that a highly-dangerous environment existed in the B–Right section because the mantrip station was located at the bottom of a steep slope around a curve. According to Mr. Sharkey, the slope was made even more dangerous because the belt line used for removing coal from the area ran

---

7. A plaintiff may also show that an employer acted with "deliberate intention" by proving that "such employer or person against whom liability is asserted acted with a consciously, subjectively, and deliberately formed intention to produce the specific result of injury or death to an employee." W.Va.Code § 23–4–2(c)(2)(i). In this case, however, the Cecils elected to establish "deliberate intention" by proving the five requirements set forth in W.Va.Code 23–4–2(c)(2)(ii)(A)–(E).

8. It also appears that to some extent the Cecils presented evidence to portray the mechanics jeep operated by Mr. Pendleton as dangerous because

it had four previous brake repairs. The Cecils also alleged that the jeep was improperly designed because the braking systems and the sanding device could not be operated at the same time. Nonetheless, no witness ever testified that the brakes were defective or that Consolidation knew that the brakes did not work or failed to have them properly inspected. Likewise, there was no evidence that Consolidation designed the braking systems on the vehicle. Thus, the focus of a specific unsafe working condition remained on the lack of a derail device on the B–Right track.

parallel to the track making it slick. Mr. Sharkey testified that the lack of a derail device on that section of track made it certain that a runaway vehicle would careen into the mantrip station. He also testified that the lack of a derail device in the B–Right section violated W.Va.Code § 22A–2–37(w) (1987) [9] which provides that:

> Positive stopblocks or derails shall be installed on all tracks near the top and at landing of shafts, slopes and surface inclines. Positive-acting stopblocks or derails shall be used where necessary to protect persons from danger of runaway haulage equipment.

The Cecils claimed that Consolidation was aware of this unsafe working condition because other runaway accidents had occurred in the mine. As discussed above, the Cecils presented evidence that Consolidation's mine foreman, Danny Crutchfield, was injured in a runaway accident involving the same type of rail jeep. The Cecils also presented evidence regarding another runaway accident involving two other employees of Consolidation. The Cecils further claimed that Consolidation intentionally exposed Mr. Cecil to this unsafe working condition and that he was injured as a proximate result of being exposed thereto. As required by W.Va.Code § 23–4–2(c)(2)(ii), the jury was presented with five interrogatories to answer concerning whether the evidence proved the five elements of the statute. The jury answered "yes" to all five interrogatories.

In this appeal, Consolidation essentially argues that the five elements were not proven because the evidence was disputed at trial. First, Consolidation contends that the lack of a derail device on the B–Right track was not shown to be a specific unsafe working condition because several Consolidation employees testified that a derail device was not appropriate or necessary. Secondly, Consolidation contends that the testimony regarding other runaway incidents in the Amonate Mine was not sufficient to prove "subjective realization and appreciation of the existence of such specific unsafe working condition" because

those incidents were not "substantially similar" to the accident that resulted in Mr. Cecil's injuries. In addition, Consolidation states that it never received any citations for failure to have a derail device on the B–Right track prior to this accident, nor had any prior complaints been made by any employee about the lack of a derail device in that section of the mine to put Consolidation on notice that an unsafe working condition existed. Consolidation also argues that the "where necessary" language in W.Va.Code § 22A–2–37(w) imparts at least some discretion to a mine operator as to where a derail device should be used. Consolidation further maintains that because the evidence was insufficient to prove exposure to an unsafe working condition, the requirement of "intentional exposure" could not have possibly been proven. Finally, Consolidation asserts that the evidence demonstrated that Mr. Cecil's injuries resulted from his own failure to adhere to safety instructions given to him by Consolidation. Consolidation refers to testimony which indicated that its management had given repeated oral instructions and safety training to its employees to stay clear of parked vehicles before the operator had clearance to use the track.

After reviewing the evidence in the light most favorable to the Cecils, we find that there was sufficient evidence to support each of the five requirements set forth in W.Va. Code 23–4–2(c)(2)(ii)(A)–(E). First, there was evidence presented to support a finding that a specific unsafe working condition existed in the mine by the failure to have a derail device on the B–Right track. Secondly, a reasonable trier of fact could have concluded that the evidence of other runaway incidents in the mine satisfied the requirement of "subjective realization and an appreciation of the existence of such specific unsafe working condition." Third, the lack of a derail device clearly violated W.Va.Code § 22A–2–37(w)'s mandate that "Positive stopblocks or derails shall be installed on all tracks near the top and at landings of shafts, slopes and surface inclines." Fourth, there was evidence to

---

**9.** W.Va.Code § 22A–2–37 was amended in 1997. However, the language of W.Va.Code § 22A–2– 37(w) has remained unchanged.

support a finding that notwithstanding the existence of the above facts, Consolidation nevertheless intentionally exposed Mr. Cecil to such specific unsafe working condition. Finally, there was evidence to support the conclusion that Mr. Cecil's injuries were the proximate result of being exposed to such specific unsafe working condition. Although Consolidation argues that Mr. Cecil's injuries were the result of his failure to abide by its safety instructions to not board a rail vehicle before the operator had clearance to use the track, there was ample evidence that indicated that it was an accepted common practice for the miners to sit in the vehicle while waiting for the clearance signal. Accordingly, we conclude that the jury's verdict as to liability was supported by the evidence and the circuit court did not err by denying Consolidation's motion for judgment notwithstanding the verdict.

 We next consider Consolidation's contention that the circuit court erred by not reducing the verdict by the amount of the settlements between the Cecils and Fletcher and D & M and the amount of Mr. Cecils' future medical bills. In Syllabus Point 4 of *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996), we held that: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*"

 Consolidation contends that the circuit court should have reduced the verdict by $290,000.00 for the good faith settlement between the Cecils and Fletcher and D & M. Consolidation asserts that the Cecils were entitled to only one recovery as this Court recently explained in *Clark v. Kawasaki Motors Corp., U.S.A.,* 200 W.Va. 763, 490 S.E.2d 852 (1997). In Syllabus Point 1, in part, of *Clark,* we held that: "Defendants in a civil action against whom a verdict is rendered are entitled to have the verdict reduced by the amount of any good faith settlements previously made with the plaintiff by other jointly liable parties." *See also* Syllabus Point 7, in part, *Board of Educ. of McDowell*

*County v. Zando, Martin & Milstead, Inc.,* 182 W.Va. 597, 390 S.E.2d 796 (1990).

The Cecils respond that the Workers' Compensation Act displaces the common law "one satisfaction rule." They argue that because an injured worker is permitted a double recovery in instances where he or she receives benefits under the Workers' Compensation Act and also recovers against a third-party wrongdoer, Consolidation was not entitled to have the verdict reduced by the amount of the Fletcher and D & M settlements. We disagree.

 In *Zando, supra,* we explained the reasons for allowing a defendant against whom a verdict is rendered to reduce the damages to reflect any partial settlement reached between the plaintiff and a joint tortfeasor. We stated that "[t]his practice is premised on the principle that a plaintiff is entitled to one, but only one, complete satisfaction of his injury . . . Such a rule furthers the strong public policy favoring out-of-court resolution of disputes . . . The law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation[.]" *Zando,* 182 W.Va. at 604, 390 S.E.2d at 803 (citations omitted). We find no reason to circumvent this basic premise of law in the context of a "deliberate intention" claim. We recognize that an employee is entitled to receive workers' compensation benefits and yet, pursue a judgment against a third-party tortfeasor. *See* Syllabus Point 3, *Mercer v. Ott,* 78 W.Va. 629, 89 S.E. 952 (1916). However, that is not the case here. In a deliberate intention action, the employee is seeking to recover from his or her employer amounts in excess of the benefits paid by the workers' compensation system. *See* W.Va.Code § 23-4-2(b). In other words, if the employee proves "deliberate intention" he or she is entitled to be made "whole" for the injuries sustained. In this instance, the "one satisfaction rule" must be applied. Accordingly, in this case, Consolidation was entitled to have the jury's verdict reduced by the amount of the settlements between the Cecils and Fletcher and D & M.

 Consolidation also asserts that it was entitled to have the jury's verdict reduced by

the amount of future medical expenses that will be incurred by Mr. Cecil in accordance with W.Va.Code § 23–4–2(b).[10] Consolidation states that because it is a self-insured employer under the Workers' Compensation Act, it will pay for all of Mr. Cecil's future medical expenses. Therefore, the circuit court should have reduced the jury verdict by $44,256.00, the amount of future medical expenses that Mr. Cecil will incur as stipulated by the parties.

The Cecils respond that Consolidation is not entitled to a reduction of the verdict for future medical expenses because they never requested such an award from the jury. The Cecils state that if this amount had been included in the verdict, then a reduction of the verdict by the amount allocated by the jury for future medical expenses would have been appropriate in accordance with W.Va. Code § 23–4–2(b). However, a claim was not made and thus, the circuit court properly refused to reduce the verdict. We agree.

We recognize that W.Va.Code § 23–4–2(b) provides that an employee may recover damages in a "deliberate intention" claim over the amount of workers' compensation benefits "received or receivable." However, in this case it is clear the Cecils never included in their cause of action a claim for future medical expenses. The verdict form submitted to the jury reflects that compensatory damages were awarded to Mr. Cecil for past and present pain, suffering, and emotional distress; loss of physical function; lost wages; future pain, suffering, and emotional distress; future loss of physical function; and disfigurement and scaring.[11] Clearly, a careful review of the verdict form shows the jury never made an award for future medical expenses. Therefore, the circuit court did not err by refusing to reduce the verdict for future medical expenses that will be incurred by Mr. Cecil.

10. W.Va.Code 23–4–2(b) (1991) provides:

> If injury or death result to any employee from the deliberate intention of his employer to produce such injury or death, the employee, the widow, widower, child, or dependent of the employee shall have the privilege to take under this chapter, and shall also have a cause of action against the employer as if this chapter has not been enacted, for any excess of dam-

For the reasons set forth above, we affirm the jury's verdict, but we conclude that the circuit court erred in entering judgment against Consolidation for the full amount of the verdict except the remittitur. The verdict should have also been reduced by the amount of the settlements between the Cecils and Fletcher and D & M. Accordingly, we set aside the judgment of the Circuit Court of McDowell County and remand this case to that court for entry of judgment in accordance with the principles enunciated herein.

Affirmed, in part, Reversed, in part, and Remanded.

ages over the amount received or receivable under this chapter.
W.Va.Code § 23–4–2 was amended in 1994 but only stylistic changes were made to W.Va.Code § 23–4–2(b).

11. Mrs. Cecil was awarded compensatory damages for past and future loss of consortium, kindly offices, society and companionship of her husband.