# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Donna Hamilton,**
**Plaintiff Below, Petitioner**

**FILED**

**October 20, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 16-0856** (Monongalia County 14-C-691)

**Jaiyoung Ryu, M.D.,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Donna Hamilton ("petitioner"), by counsel Stephen P. New, Amanda Taylor, Mark R. Staun, and David B. Lunsford, appeals the Circuit Court of Monongalia County's order denying her motion for a new trial following a defense verdict in the trial of her medical malpractice action. Respondent Jaiyoung Ryu, M.D. ("Dr. Ryu"), by counsel William E. Galeota, Rodney L. Bean, and Crystal Bombard-Cutright, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Factual and Procedural Background

In this appeal, petitioner challenges multiple evidentiary rulings made by the circuit court in the trial of her medical malpractice suit against Dr. Ryu.[1] In her suit, petitioner alleged that she experienced permanent ulnar nerve injury in her left arm following a total elbow arthroplasty (total elbow replacement) performed by Dr. Ryu. At the conclusion of six days of trial, the jury returned a verdict finding that petitioner failed to prove that Dr. Ryu breached the standard of care in his treatment of petitioner's elbow. The circuit court denied petitioner's motion for a new trial, and this appeal followed.

The evidence at trial revealed that petitioner injured her elbow in September of 2011 when she fell while working as a cook in a school kitchen. She reported to the Appalachian

---

[1] In addition to Dr. Ryu, petitioner originally named West Virginia University Board of Governors and the West Virginia Medical Corporation d/b/a University Health Associates as defendants. Against these defendants, she alleged claims of vicarious liability, negligence, gross negligence, negligent retention, negligent supervision, and loss of consortium. Prior to trial, petitioner voluntarily dismissed all of her claims with the exception of the negligence claim against Dr. Ryu.

Regional Hospital emergency room, which referred her to Dr. Nathan Doctry, an orthopedic surgeon in Beckley, West Virginia. After her visit with Dr. Doctry, petitioner sought treatment from a second orthopedist. However, she returned to Dr. Doctry in October of 2011.[2] Dr. Doctry ordered a CT scan of petitioner's left arm and discussed with petitioner the possibility of performing either a radial head replacement or radial head excision on petitioner's elbow. Dr. Doctry then referred petitioner to Dr. Ryu at the West Virginia University Orthopedic Clinic.

Petitioner presented to Dr. Ryu for evaluation in December of 2011. Petitioner reported to Dr. Ryu that she lacked motion in her left upper extremity, experienced pain in the elbow when lifting, and that she was unable to perform any task at face level. Dr. Ryu performed a physical examination of petitioner and reviewed her prior x-rays and CT scan. The imaging showed a posterior subluxation of the radial head, coronoid fracture, capitellum fracture, moderate arthritis at the ulnotrochlear joint, and post-traumatic deformity at the radial capitellum joint. Based on his evaluation, Dr. Ryu recommended a total elbow arthroplasty, and petitioner agreed.[3]

Petitioner returned to Dr. Ryu's office in January of 2012 for a history and physical to ensure that she was medically fit to undergo surgery. Physician Assistant Jon Kline saw petitioner during this visit. Mr. Kline obtained petitioner's signature on the informed consent form, which listed possible risks of surgery to include "infection, pain, stiffness, damage to nerve, artery, vein or soft tissue." The informed consent form also stated that petitioner "acknowleg[ed] that residents, fellows, physician assistants and/or other nonphysician health care professionals, under the supervision and direction of the above-named physician, may perform portions of this procedure."

Petitioner underwent the total elbow arthroplasty on February 12, 2012, after which she experienced numbness in her arm and hand. The surgery was performed by Dr. Ryu and a medical resident. Post-operative testing showed damage to the sensory portion of the ulnar nerve. Dr. Ryu opined that petitioner's ulnar nerve neuropathy was caused by the performance of the total arthroplasty and it was a common complication of the surgery. Petitioner's expert witness, Dr. Scott Desman, testified that petitioner should not have undergone a full-elbow replacement because it was unnecessary and inappropriate. Dr. Desman testified that, instead, petitioner should have undergone a radial head resection or excision because these procedures do not expose the ulnar nerve to potential damage.

On April 6, 2016, the jury returned a verdict finding that petitioner failed to prove by a preponderance of the evidence that Dr. Ryu was negligent in his treatment. Petitioner filed a

---

[2] Dr. Ryu states that petitioner returned to Dr. Doctry after the second orthopedist concluded that her injury did not prevent her from returning to work.

[3] Dr. Doctry testified at trial that he was not surprised that Dr. Ryu recommended a total elbow arthroplasty instead of a radial head replacement or radial head recession; that he trusted Dr. Ryu's judgment and clinical acumen; and that, if he disagreed with Dr. Ryu's recommendation, he would have advised petitioner to seek another opinion. Additionally, Dr. Doctry testified that petitioner asked him for his thoughts on Dr. Ryu's recommendation, and he advised her to go through with the procedure.

motion for a new trial in which she argued, in relevant part, that the circuit court erred by (1) permitting Dr. Ryu to testify to expert opinions that had not been disclosed to her; (2) prohibiting petitioner from questioning Dr. Ryu about the "special care" that he exercised regarding petitioner's ulnar nerve during the surgery; and (3) permitting Dr. Ryu to elicit undisclosed opinions from his expert witness, Dr. David Glaser. Following a hearing, the circuit court denied petitioner's motion for a new trial by order entered on August 10, 2016. This appeal followed.

**Discussion**

On appeal, petitioner raises three assignments of error. First, she argues that the circuit court erred in allowing Dr. Ryu to present testimony and argument regarding the ulnar nerve and performance of the surgery, while prohibiting her from introducing any evidence or argument regarding the same. Second, petitioner argues that the circuit court erred when it permitted Dr. Ryu to offer his own undisclosed expert opinions at trial. Third, petitioner argues that the circuit court erred in allowing Dr. Ryu's expert witness, Dr. David Glaser, to offer undisclosed opinions. Petitioner contends that these alleged errors entitle her to a new trial.

Rule 59(a) of the West Virginia Rules of Civil Procedure provides, in relevant part, that "[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law[.]" This Court has held as follows:

> When a trial judge vacates a jury verdict and awards a new trial pursuant to Rule 59 of the *West Virginia Rules of Civil Procedure,* the trial judge has the authority to weigh the evidence and consider the credibility of the witnesses. If the trial judge finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, the trial judge may set aside the verdict, even if supported by substantial evidence, and grant a new trial. A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion. Syl. Pt. 3, *In re: State Public Bldg. Asbestos Litigation,* 193 W.Va. 119, 454 S.E.2d 413 (1994), *cert. denied sub nom. W.R. Grace & Co. v. West Virginia,* 515 U.S. 1160, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995).

Syl. Pt. 3, in part, *Rodriguez v. Consolidation Coal Co.*, 206 W.Va. 317, 524 S.E.2d 672 (1999). With respect to the circuit court's review of the evidence when considering a motion for a new trial, this Court has long held that

> [i]n determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true.

Syl. Pt. 3, *Walker v. Monongahela Power Co.,* 147 W.Va. 825, 131 S.E.2d 736 (1963). Additionally, we have held that "[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that

such action amounts to an abuse of discretion." Syl. Pt. 1, *Cecil v. D & M Inc.*, 205 W.Va. 162, 517 S.E.2d 27 (1999) (quoting Syl. Pt. 6, *State v. Kopa,* 173 W.Va. 43, 311 S.E.2d 412 (1983)). With these standards in mind, we turn to petitioner's arguments.

Petitioner's first assignment of error is that the circuit court allowed Dr. Ryu to present evidence regarding the performance of the surgery, but prohibited her from doing the same. During opening statements, Dr. Ryu's counsel stated that the jury would hear evidence of how Dr. Ryu took "special care" not to damage the ulnar nerve, and during his direct examination, Dr. Ryu testified to the same. Petitioner complains that the circuit court allowed this testimony to be admitted, even though she was not challenging how Dr. Ryu performed the surgery. However, petitioner argues that the circuit court prevented her from admitting evidence in the form of the surgery schedule which showed that a medical resident was the one who transposed the ulnar nerve back into place after the elbow replacement; that Dr. Ryu had left the procedure by this point, so he could not have given "special care" to the nerve. Petitioner contends that the circuit court permitted Dr. Ryu to "confuse the issue" by focusing on how he took care of the nerve when the issue was whether the surgery was necessary.

Petitioner also complains that the circuit court excluded the video deposition of Dr. Bruce Guberman, who had opined that the surgery was the cause of petitioner's injury. The circuit court excluded the deposition because Dr. Guberman was not an orthopedist, and admitted that he had never performed an elbow replacement.

Upon our review, we find no merit in petitioner's first assignment of error. Initially, the record demonstrates that petitioner's theory of the case at trial was a bit of a moving target. At one point, petitioner appears to have alleged that Dr. Ryu was negligent because he was not present to supervise the medical resident who participated and/or because the surgery was unnecessary. However, at other times, she appeared to concede that there was no negligence in the performance of the surgery, and that her claim focused solely on lack of informed consent, that is, that she was not properly informed that numbness was a complication of the surgery or a that medical resident would participate in the procedure. As Dr. Ryu points out, many of the circuit court's evidentiary rulings favored petitioner and allowed her to advance her differing theories of the case, even over Dr. Ryu's objections.

Importantly, petitioner did not present expert testimony that Dr. Ryu breached the standard of care during the surgery. The record reflects that petitioner attempted to imply to the jury that Dr. Ryu breached the standard of care because he was absent when the ulner nerve was transposed. Petitioner argues that she wanted to introduce the surgery schedule to challenge Dr. Ryu's assertion that "special care" was taken to protect the nerve. However, there was no expert testimony to support a claim that the standard of care was breached at all during the surgery, which would include transposition of the nerve. Thus, the circuit court's ruling to preclude petitioner from introducing Dr. Ryu's surgery schedule was not only entirely within the court's discretion, but also consistent with the West Virginia Medical Professional Liability Act, which requires that "a defendant's failure to meet the standard of care, if at issue, shall be established . . . by testimony of one or more knowledgeable, competent expert witnesses." W.Va. Code § 55-7B-7, in relevant part. As Dr. Ryu correctly argues, it was of no consequence whether he or a

medical resident took "special care" of the nerve during the surgery because the standard of care during the surgery was not an issue in the case.

Additionally, the record shows that the circuit court permitted petitioner great leeway to advance her theory that she had not given informed consent to the surgery. Over Dr. Ryu's objection, petitioner questioned Mr. Kline extensively on his visit with petitioner during which petitioner signed the informed consent form. The court permitted petitioner to elicit testimony (1) that Mr. Kline did not specifically review the portion of the form that addressed medical residents performing parts of the surgery, and (2) that, in fact, a medical resident did perform part of her surgery. Additionally, even though petitioner testified that she did not recall the informed consent process, she testified that she would not have agreed to the surgery had she been advised that a medical resident might perform part of it. Contrary to her protestations on appeal, the jury heard petitioner's evidence that she did not consent to the surgery, and rejected it. Given that Dr. Ryu is entitled to "every reasonable and legitimate inference" drawn from the evidence, we see no basis to disturb the verdict in his favor. *See*, Syl. Pt. 3, *Walker, supra.*

Lastly, as part of her first assignment of error, petitioner challenges the exclusion of Dr. Bruce Guberman's expert causation opinion. During Mr. Guberman's deposition, he testified, over Dr. Ryu's objection, that the total elbow arthroplasty was the cause of petitioner's ulnar nerve injury. At trial, petitioner relied upon two expert witnesses, Dr. Scott Desman and Dr. Bruce Guberman. Dr. Ryu objected to the admission of Dr. Guberman's causation opinion on the grounds that he is board-certified in internal medicine and cardiology, had never performed a total elbow arthroplasty, and, therefore, was not qualified to render a causation opinion. "Whether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused." Syl. Pt. 5, *Mayhorn v. Logan Med. Found.*, 193 W.Va. 42, 454 S.E.2d 87 (1994) (citations omitted). Given Dr. Guberman's qualifications in unrelated fields, we find no abuse of discretion by the circuit court preventing the jury from hearing his causation opinion. Importantly, we find that petitioner suffered no prejudice because the circuit court allowed her other expert, Dr. Desman, to offer a causation opinion that petitioner's ulnar nerve injury was caused by the surgery.

Petitioner's second assignment of error is that the circuit court allowed Dr. Ryu to offer undisclosed expert opinions on two issues: (1) that he exercised "special care" toward the ulnar nerve during surgery, and (2) that radial head resection was contraindicated due to instability of petitioner's wrist. Petitioner concedes that she failed to object to the admission of this testimony, but asserts that the admission of the evidence constitutes "plain error." "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

In the present case, there was no error, let alone plain error. Dr. Ryu was disclosed both as a witness on his own behalf and as an expert witness on the issue of whether his care and treatment of petitioner caused or contributed to the alleged injuries. Dr. Ryu's testimony that he took "special care" of the ulnar nerve is hardly expert testimony; rather, he merely described how the surgery was performed. He was deposed; was questioned as an adverse witness in

petitioner's case-in-chief; and was cross-examined by petitioner's counsel during the defense's case-in-chief. This Court cannot find that the circuit court erred by allowing him to testify regarding petitioner's ulnar nerve or that petitioner was in any way unfairly prejudiced by that testimony. Next, the record demonstrates that petitioner was aware well before trial of Dr. Ryu's opinion that a radial resection was contraindicated because he testified to as much in his May of 2015, deposition. The record simply does not support petitioner's assertion of plain error; thus, petitioner's second assignment of error is rejected.

In her final assignment of error, petitioner challenges the admission of the video deposition of Dr. David Glaser, Dr. Ryu's expert witness. The deposition at issue was taken by petitioner more than a month before the trial, yet she appears to complain that she was ambushed at trial by Dr. Glaser's previously undisclosed opinions. As Dr. Ryu correctly points out, Dr. Glaser's expert disclosure covered the opinions to which he testified in his deposition; petitioner knew exactly what Dr. Glaser's testimony would be at trial.

Petitioner also appears to complain that the circuit court allowed the unedited video deposition, which included counsels' objections, to be played for the jury. Petitioner fails to explain how this prejudiced her in any way. Nevertheless, the record reveals that, prior to trial, defense counsel wrote to petitioner's counsel and attempted to designate a portion of Dr. Glaser's deposition to be played at trial. However, petitioner's counsel did not respond. Thus, she has waived any objection inasmuch as she now complains that the circuit court allowed the entire deposition to be played. *See*, in part, W.Va. R. Evid. 103(a)(1) ("A party may claim error in a ruling to admit . . . evidence only if the error affects a substantial right of the party and . . if the ruling admits evidence, a party, on the record . . . (A) timely objects or moves to strike; and (B) states the specific ground, unless it was apparent from the context[.]"). Upon our review, we reject petitioner's final assignment of error.

### Conclusion

For the foregoing reasons, we affirm the Circuit Court of Monongalia County's "Order Denying Plaintiff's Motion for New Trial," entered on August 10, 2016.

Affirmed.

**ISSUED:** October 20, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum

**DISQUALIFIED:**

Justice Elizabeth D. Walker

6